Turney J.,
delivered the opinion of the Court.
The proof in the record establishes a partnership between C. M. & H. C. Horton.
In the opinion of the writer, the proper holding would be, — upon the death of one of a partnership 'owning realty, — that the interest of the deceased should descend to the heir, and be appropriated to the payment of debts, as other realty of the deceased held in his individual right: — the title thus vesting directly in the heir, without any distinction between such ves-‘titure and that of title to other lands.
It has heretofore been held by this Court, in a similar case, — where a member of a partnership, owning realty, had died, — that the survivor and heirs of the deceased were tenants in common; and that the surviving partner could dispose of the realty as other -assets belonging to the firm. From that opinion the *662 writer withheld his assent: — because the rule, making-the distinction, is arbitrary and highly technical; and rests upon no higher ground than would a rule vesting title in an executor or an administrator. The reasons given for it, being the same that may be urged for the representative: — the objections to it,, those that may be, and are, given against him. . The-rule, as -it is, is a seductive invitation to fraud by the survivor upon the rights of the widow and heirs of the dead partner. This can only be remedied by legislation, requiring the sanction of the Courts to the-sale of the partnership lands by the survivor. Thus, bringing it under the rule which requires plenary proof of indebtedness or of the necessity of a sale for-partition: — that necessity to be inquired into by the-Court, assisted by a competent guardian ad litem for minors. The relation of a surviving partner to the-interests of the deceased is precisely the same as that of an administrator to the individual estate.
Under the rule, as it exists, established by the decision of this Court, the sale of the “ Shelby street lot” is valid. "Tis true, the interest of H. C. Horton was limited to such value as his partner might place upon his services; still this was capital in the concern;- and in this way he acquired an interest by deed in the “Shelby street” or “cotton shed lot.” The transfer by H. C. Horton, the surviving partners of C. M. Horton & Co., of the leasehold estate and the other assets of the. firm to Horton, Estes & Co., — of which firm J. B. Sharp, administrator of C. M. Horton, was a member, — is governed by the same rule; but whether- *663 it were or not, is a matter of no consequence, as they are bound by their undertaking to account to the estate of C. M. Horton. We add, we know of no rule or case, forbidding a purchase of property by the administrator of the deceased partner, in his private or individual capacity, from the surviving partner — fraud being absent.
It is objected that the sale of the “Main street lot,” as it is called in the proceedings, is void for irregularity, and want of material substance.
The decree of sale was made by a Court of competent jurisdiction. We are furnished only with the decree of confirmation, embracing the report of the special commissioner. This decree, abstractly regarded,, is sufficiently full and definite to show that the Court had jurisdiction of the subject matter.
The distinction between this case, and those relied upon to vacate the sale, is, that in each of the reported cases, the party claiming under the decree was affirmatively urging its validity and regularity as a muniment of title; in which attitude the laboring oar was upon him to show step by step, and link by link, the consistency and fulness of the chain of title. Here the complainants affirmatively and offensively attack the proceedings of the Court making the decree of sale; and the burden is upon them to make out their case, and to bring before the Court such parts of the record of the original proceedings as contain the defects alleged, and develop the fatal objection to them.
While the decree in the transcript does not recite many of the facts necessary to authorize the Court to *664 order the sale, yet it recites a sufficiency to show the jurisdiction, and refers to previous steps in the cause which may embrace all that is necessary.
The complainants have alleged, and the defendants have denied, the insufficiency and irregularity of the proceedings. This reduces it to the question, Where is the onus probandi? Which is of easy solution— The party affirming must, make good his affirmation. The maxim, that all things are presumed to have been done rightly, applies with peculiar pertinence to the proceedings of Courts having jurisdiction of the subject matter of a suit and the relief sought.
To the objection that the lot was sold, leaving slaves, — thus showing that the personalty was not exhausted, — it is sufficient to reply: that, in cases where the interests of minor heirs are involved, Courts of Chancery are empowered to exercise full discretion, under the facts of each particular case, as to which it would be better to preserve to the estate — the personalty or the realty. In such cases, — where the estate is composed of real and personal property, — the Court may order the sale of either, as may appear to the best interest of those concerned. This doctrine was maintained in an MS. opinion, by C. J. Nicholson, delivered during the last term at Nashville.
It is insisted that the sale should be set aside, because Sharp, the administrator of C. M. Horton and the special commissioner to sell, was on4 of the purchasers at his own sale. This is positively denied. Complainants rely upon a trust deed from Sharp, Estes and Crocker to Wm. K. Poston, to the lot, in *665 which is the expression, “A certain lot in the City of Memphis, bought by us at a sale,” etc., “the property of the estate of C. M. Horton,” etc. To this is replied the testimony of these parties, to the effect that Estes purchased the lot without consultation with, or the knowledge of the other two partners, and for himself only; that the others knew nothing of his purpose to buy, and had no interest in his purchase; that afterwards, rather than have Estes draw his capital from the firm to make the payments, they became joint owners with him of the lot; and that the recital in the deed to Poston is the result of oversight and mistake, lately coming to their notice. It is objected to this testimony, that the recital estops the parties from making the explanation offered. The objection is not well taken. For whatever of bad policy and inducement to perjury there, may be in the law, making parties in interest competent witnesses, the Legislature is responsible. It is our duty to administer. Then would it have been competent for these parties to have shown, aliunde, that the recital, as a fact, was a mistake or an oversight? Were it to become material, a Court of Chancery would reform the deed in this particular, upon the proof of its insertion by mistake or accident. While other evidence would have been more satisfactory to the Court, that offered fills the requirements of the law.
The decree is affirmed and the cause remanded for the accounts ordered by the Chancellor.
In the examination of the case we' have had great vexation and annoyance with the illegality, omissions, *666 and transpositions of the record. Besides these faults, it contains bonds, subpoenas, notices to take depositions, captions, and certificates to . depositions, and other immaterial papers, upon which there is no question and which are inserted in violation of a long established rule of this Court. The Clerk, Augustus Alston, will be allowed no fees for the transcript furnished by him in this cause.